UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WALPOLE WOODWORKERS, INC., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. 3:02 CV581 (JBA) |
| v. | : | |
| | : | |
| ATLAS HOLDINGS LLC, ATLAS | : | |
| OUTDOOR, LLC, ATLAS FENCING, | : | |
| INCORPORATED, ATLAS RECREATIONAL, | : | |
| LLC, and MICHAEL C. PICARD, | : | |
| | : | |
| Defendants. | : | APRIL 14, 2004 |

**WALPOLE WOODWORKERS, INC.'S EMERGENCY MOTION TO
ENFORCE CONSENT JUDGMENT, FOR A FINDING OF CONTEMPT
AND FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

PRELIMINARY STATEMENT

Plaintiff Walpole Woodworkers, Inc. ("Walpole") hereby moves for an order: (a) enforcing a December 16, 2002 Consent Judgment against defendants Michael Picard ("Picard") and Atlas Holdings, LLC, Atlas Outdoor, LLC, Atlas Fencing, Incorporated, and Atlas Recreational, LLC (collectively, "Atlas"), including the entry of a Writ of Attachment in the sum of $63,125; (b) finding defendants in contempt of the Consent Judgment; and (c) awarding Walpole its attorneys' fees including costs and expenses for having been required to seek the instant relief.  Walpole brings this motion on an emergency basis because, absent immediate relief, Picard and Atlas may dissipate their assets or otherwise undertake conduct inconsistent with Walpole's right to an attachment of their real and personal property.

ORAL ARGUMENT REQUESTED

## INTRODUCTION

In flagrant disregard of the December 16, 2002 Consent Judgment entered by the Court in this case, Picard and Atlas have failed to make a final $50,000 payment plus accrued interest totaling $13,125 that was due on April 1, 2004. As the Court may recall, this action arose out of the defendants' blatant copying of pictures, trademarks and text from Walpole's copyrighted product catalogues for use in their own catalogues. As part of the settlement of this case, the Court entered a Consent Judgment order granting judgment in favor of Walpole, and ordering Picard and Atlas to pay Walpole $350,000 in quarterly installments over a 16-month period. The express terms of the Consent Judgment provide that in the event of a default by any of the defendants, Walpole is entitled to, among other things: (1) make immediately due any unpaid balance and interest, (2) attachment of the real and personal property of Picard and Atlas in the amount of the unpaid balance and interest, and (3) Walpole's attorneys' fees and costs incurred in enforcing the Consent Judgment. Because Picard and Atlas are in default of the Consent Judgment by failing to make their final payment, the Court should grant the relief requested by this motion. Indeed, neither Picard nor Atlas has contacted Walpole to explain their failure to make the final payment.

Notably, just before the defendants failed to make the final payment, a supposedly "new" Atlas issued a notice claiming that it had purchased all the assets of the "former" Atlas "free and clear of any liabilities" of the "former" Atlas. This alleged asset purchase, however, has all the indicia of a sham designed to defraud Atlas creditors, and thus should not relieve Atlas of its obligations under the Consent Judgment. The supposed "new" Atlas has the same name, headquarters, telephone and facsimile numbers, and upper management as the "former" Atlas. Under settled law, then, the Court can, if necessary, "pierce"

Atlas's corporate veil to prevent it committing fraud against Walpole and evading its obligations under the Consent Judgment.  And, in any event, because Picard – as a named defendant in his individual capacity – is personally and jointly responsible under the terms of the Consent Judgment, at a minimum, an attachment can and should issue against Picard himself, regardless of the corporate form of the "new" Atlas.

The Court should also find the defendants in contempt of a court order and award appropriately heavy sanctions.  The defendants have provided no excuse for ignoring their obligations under the Consent Judgment.  A finding of contempt is particularly warranted given that the Court has already once found the defendants in contempt, when they violated the Court's Preliminary Injunction Order prohibiting them from using Walpole's copyrighted material and trademarks.

## BACKGROUND

On December 16, 2002, the Court entered a Consent Judgment in favor of Walpole and against Picard and Atlas on Count I (Copyright Infringement) of the First Amended Complaint.  Copies of the Consent Judgment and First Amended Complaint are attached as Exhibits A and B, respectively, to the Affidavit of Roland H. Schwillinski ("Schwillinski Aff.").  Picard is the President of Atlas and he was added as a defendant when Walpole learned that Picard was personally involved in the willful violation of Walpole's intellectual property rights.  *See* Schwillinski Aff., Ex. B.  Under the Consent Judgment, the Court ordered Picard and Atlas to pay Walpole $350,000 over a 16 month period in quarterly installments.  *See* Consent Judgment, ¶ 3 (Schwillinski Aff., Ex. A).  A last installment of $50,000 was due on April 1, 2004.  *Id.* at ¶ 3(F).  Under the Consent Judgment, Picard and Atlas were also ordered to pay interest on any unpaid balance at the rate of 7% per year.  *Id.*

at ¶ 3(G). That accrued interest now totals approximately $13,125. Affidavit of Non-Payment by James E. Loer Jr. ("Loer Aff."), ¶ 3.

The Consent Judgment sets forth Walpole's remedies in the event of default by the defendants. Paragraph 5 of the Consent Judgment states that upon filing an "Affidavit of Non-Payment" setting forth the existence of the default, Walpole shall be entitled to:

(1) accelerate and make immediately due any unpaid balance and interest;

(2) Walpole's attorneys' fees and costs incurred in enforcing the Judgment or any terms of the Settlement Agreement between the parties;

(3) post-judgment interest at the statutory rate; and

(4) an attachment of the real and personal property owned by Atlas and Picard in the amount of the accelerated unpaid balance and interest….

*See* Consent Judgment ¶ 5 (Schwillinski Aff., Ex. A). The Court also expressly retained jurisdiction of the action to "enter such other and further orders as are necessary and proper." *Id.* at ¶ 6.

As set forth in the Loer Aff., Picard and Atlas have so far paid only $300,000 of the $350,000 due. Picard and Atlas did not make the final $50,000 payment plus accrued interest, as required by the terms of the Consent Judgment, and did not contact Walpole at any time to indicate that they would not make the final payment. *See* Loer Aff. ¶ 3.

Furthermore, as noted, just before Picard and Atlas failed to make the required final payment, Walpole received a copy of a March 15, 2004 notice letter (apparently sent out by Atlas to certain of its suppliers), in which a supposedly new Atlas claims to have purchased the assets of the "former" Atlas at a "liquidation sale" two days earlier. *See* Loer Aff. ¶ 4, Ex. A. The "new" Atlas alleges in the letter that the asset purchase was made "free and clear from any and all liabilities" of the "former" Atlas. *See id.* The letter also goes on to

-4-

state that Atlas has "engaged some of the key members" of the "former" Atlas, including Michael Picard – who was President of the "former" Atlas and is now identified as the President of the "new" Atlas. *See id.* Certain other officers and managers from the "former" Atlas are also now "key" members of management of the "new" Atlas. A comparison of Atlas's March 15th notice letter to a 2002 Dunn & Bradstreet business report of the "former" Atlas shows that Richard M. D'Angelo – who signed the March 15th letter as Chief Executive Officer of the "new" Atlas – was the Treasurer of the "former" Atlas. *See id.* ¶ 5, Exs. A and B. Similarly, John R. Uvino – whose name appears directly below Picard's on the March 15th letter and is now identified as "Production Manager" – was a Vice President of the "former" Atlas. *See id.* The "new" Atlas has even kept the same address for its corporate headquarters (30 Northeast Industrial Road, Branford, CT 06405), the same telephone number (203-483-9013) and the same facsimile number (203-483-9985) of the "former" Atlas. *See id.* at ¶ 5, Exs. A, B and C.

      This is not the first time that the defendants have violated an Order of this Court. On April 19, 2002, the Court enjoined Atlas from, among other things, distributing or using any materials that infringe the copyrights or trademarks of Walpole. *See* Schwillinski Aff. Ex. C (Court's July 11, 2002 "Ruling on Pending Motions"), p. 10. Atlas violated this Order, and continued to distribute catalogues that contained pictures copied directly from Walpole's catalogues and used Walpole's copyrighted materials and trademarks as part of in-store displays. *See id.* pp. 9-16. On July 11, 2002, after a full hearing on the matter, the Court found that Atlas's conduct warranted a finding of contempt of the Court's Order. *See id.* p. 15.

ARGUMENT

    A.    Walpole Is Entitled to Attachment of Picard's and Atlas's Real and Personal Property in the Amount of $63,125.

The Consent Judgment entered by the Court is unequivocal. Picard and Atlas were ordered to make payments to Walpole as set forth therein. Despite the clear and unambiguous language of the Consent Judgment – language specifically agreed to by Picard and Atlas – the defendants have violated the terms of the Consent Judgment by failing to make their final payment of $50,000 plus accrued interest. It is, therefore, beyond dispute that Picard and Atlas are in default, and that they have triggered the default provisions of the Consent Judgment. As a result, as provided by the terms of the Consent Judgment, the Court should issue an order:

    (1)    that Picard and Atlas are in default of the Consent Judgment;

    (2)    that Picard and Atlas are required to make an immediate payment of $63,125 to Walpole;

    (3)    awarding Walpole its costs and attorneys' fees for having been required to bring the present motion; and

    (4)    entering a Writ of Attachment granting Walpole an attachment over all of the real and personal property of both Picard and Atlas to the value of $63,125.

Picard and Atlas have no valid defense for the relief requested by Walpole. Again, neither Picard nor Atlas has contacted Walpole to explain why they failed to make the final payment. *See* Loer Aff. ¶ 3.

The defendants also cannot use a corporate shell-game to evade their obligations under the Consent Judgment. First, regardless of corporate form of Atlas, Picard himself is a named party to the Consent Judgment, and is therefore jointly and personally responsible for all monies due. Thus, based on Picard's own default of the terms of the Consent

Judgment, this Court can and should issue an attachment in the full amount of $63,125 against Picard's personal and real assets.

Second, it is axiomatic that the Court may "pierce the corporate veil" of the "new" Atlas to prevent it from defrauding Walpole. Under Connecticut law, when the corporate form "is employed as a cloak for the evasion of obligations, as a mask behind which to do injustice, or invoked to subvert equity, the separate personality of the corporation will be disregarded." *See United Electrical Contractors, Inc. v. Progress Builders, Inc.*, 26 Conn. App. 749, 755, 603 A.2d 1190, 1194 (1992); *see also Falcone v. Night Watchman, Inc.*, 11 Conn. App. 218, 221, 526 A.2d 550, 552 (1987) (veil piercing is appropriate where "an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise"). Here, the "liquidation sale" that resulted in the "new" Atlas has all the indicia of a sham "employed as a cloak for the evasion of obligations." *See United Electrical Contractors, Inc.*, 603 A.2d at 1194. Indeed, the "new" Atlas appears to have made a seamless transition from the "former" Atlas in less than *two days* after the alleged liquidation sale. The "new" Atlas has the same name, the same corporate headquarters, the same telephone and facsimile numbers, the same key officers and managers, and is in the same line of business as the "former" Atlas. *See* Loer Aff. ¶ 5, Exs. A, B and C. This publicly available information alone strongly indicates that the "new" Atlas is really the same entity as the "former" Atlas. Thus, to the extent Atlas attempts to use its corporate form as a shield to its legal obligations, the Court should ignore this form, and issue an attachment against both the "new" and "former" Atlas.

B.   Picard And Atlas Are Also In Contempt Of Court

The Court should also find Picard and Atlas in contempt for their failure to abide by a clear and unambiguous terms of the Consent Judgment. A violation of a Consent Judgment – like any other court order – is subject to a finding of contempt and sanctions. *See Berger v. Heckler*, 771 F.2d 1556, 1569 (2d Cir. 1985) (consent judgments are orders of the court which may be enforced through civil contempt or other equitable orders necessary to secure compliance); *E.E.O.C. v. Local 580, Int'l Assoc. of Bridge, Structural and Ornamental Ironworkers*, No. 71-CIV-2877, 1988 WL 131293 (S.D.N.Y. Dec. 16, 1988) (consent judgments "are construed largely as contracts, but are enforced as orders [and] [t]he court's own interest in maintaining orderly proceedings and in ensuring obedience to its commands justifies any reasonable action taken by the court to secure compliance with its orders"). A court has the authority to find a party in contempt and award sanctions if: "(1) the order the party allegedly failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *See New York State Org. for Women v. Terry,* 886 F.2d 1339, 1351 (2nd Circ. 1989). Here, all three criteria are plainly met. The terms of the Consent Judgment are clear and unambiguous, and the defendants have flagrantly violated them. Indeed, Atlas's March 15th notice proclaiming that it is "free and clear of all of the liabilities" of its former self suggests a clear intent ***not*** to comply with the Consent Judgment. And again, Walpole submits that a finding of contempt and sanctions is particularly appropriate here, given that Atlas has already once been found in contempt of an Order of this Court. *See* Schwillinski Aff. Ex. C.

## CONCLUSION

For the foregoing reasons, Walpole's emergency motion to enforce consent judgment, for a finding of contempt, and for an award of attorneys' fees and expenses should be granted.

Respectfully submitted,

PLAINTIFF - WALPOLE WOODWORKERS, INC.


By  /s/ Seth M. Wilson
   Everett E. Newton - ct02508
   Seth M. Wilson - ct22171

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut  06103-3469
Telephone:  (860) 240-6065
Facsimile:  (860-240-6150
Email:  enewton@murthalaw.com
       swilson@murthalaw.com

Brenda R. Sharton - ct23697
Roland Schwillinski - ct23696
Sean Paul Cronin - ct23698
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts  02109
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
Email:  bsharton@goodwinprocter.com
       rschwillinski@goodwinprocter.com
       scronin@goodwinprocter.com
Its Attorneys

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Emergency Motion to Enforce Consent Judgment, for a Finding of Contempt and for an Award of Attorneys' Fees and Expenses was served in hand this 14th day of April, 2004 on the following:

Robert L. Berchem, Esq.
Richard J. Buturla, Esq.
Bryan L. Leclerc, Esq.
Berchem Moses & Devlin, P.C.
75 Broad Street
Milford, Connecticut  06460

Mr. Michael Picard
30 Northeast Industrial Road
Branford, Connecticut  06405

Atlas Holdings, LLC
Atlas Outdoor, LLC
Atlas Fencing, Incorporated
Atlas Recreational, LLC
30 Northeast Industrial Road
Branford, Connecticut  06405

                                    /s/ Seth M. Wilson
                              Seth M. Wilson